IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MS. LISA JONES, MR. TERRY BEASLEY, SR., MS. CHRISTINA BROOKS, MR. MICHAEL D. BRYANT, MS. DOMINIQUE DAVIS, MR. STEVEN FORTHENBERRY, ROBERT M. HOSKINS, and MRS. DORA RED | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 07 cv 7139 |
| v. | ) ) ) | Judge Joan B. Gottschall Magistrate Judge Maria Valdez |
| FIRST STUDENT, INCORPORATED, | ) ) | Trial By Jury Demanded |
| Defendant. | ) | |

## AMENDED COMPLAINT

The Plaintiffs, MS. LISA JONES, MR. TERRY BEASLEY, SR., MS. CHRISTINA BROOKS, MR. MICHAEL D. BRYANT, MS. DOMINIQUE DAVIS, MR. STEVEN FORTHENBERRY, MR. ROBERT M. HOSKINS, and MRS. DORA RED, by their attorney, Mitchell Kline, for a cause of action against Defendant, FIRST STUDENT, allege as follows:

**COUNT I -- TITLE VII and §1981--RACE DISCRIMINATION [This Count Is For All Plaintiffs, Except Ms. Brooks and Mr. Hoskins]**

1. This is an action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§2000e et seq., as amended, and 42 U.S.C. §1981, to redress and enjoin unlawful to redress and enjoin unlawful employment practices by Defendant.

### THE PARTIES

1. Each of the Plaintiffs reside in Danville, Illinois; and all Plaintiff are or had been employed by Defendant.

1

2.     Defendant, is a national company providing transportation to grade school and high school students; and at all times relevant herein had a substantial physical and corporate presence within this Judicial District, in Cook and Lake County, Illinois.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343(a) and 1343(a) (4).

5.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

6.     Plaintiffs has fulfilled all administrative prerequisites for the bringing of this lawsuit, including receiving Right to Sue letters from the Equal Employment Opportunity Commission.

## FACTS

7.     Plaintiffs are all African-American, except for Mr. Hoskins, who is Caucasian.

8.     In November 2005 Ms. Dianna Chord, a Caucasian bus driver for Defendant, sent an email to more than ten people, including Defendant's manager, Mr. Terry Kegley, which included a picture with the caption " What's up my nigga's?"  Mr. Kegley received this email on Defendant's computer.  All of the Plaintiffs have seen this email.

9.     In November 2005 Ms. Chord  sent a email to more than ten people, including Defendant's manager, Mr. Kegley,  which included a picture of African-Americans as medical providers in a hospital with a bleeding Caucasian man on a stretcher, who was dressed in Ku Klux Klan clothing and a cone shaped hat, with the caption " I could be wrong , but judging by his hat, this guy just ain't gonna make it!" Mr. Kegley received this email on Defendant's computer. All of the Plaintiffs have seen this email.

10.     In June 2006 Ms. Kathleen Faber, a Caucasian bus driver for Defendant, sent an email to more than ten people, including Robert Hoskins, one of the Plaintiffs, which contained the following language:

> Well, it appears that our African-American friends have found something else to be pissed off about. A black congresswoman (this would be Sally Sawtooth of Mobile, Alabama) reportedly complained that the names of hurricanes are all Caucasian-sounding names.
> She would prefer some names that reflect African-American culture such as Chamiqua, LaShonte, Woeisha, and Jamal. I can hear it now: A black weatherman in Mobile saying…
> 'Wordup, Muthafu…'

All of the Plaintiffs have seen this email.

11.     In May 2007 Ms. Faber sent another email which was almost identical to the one Described in paragraph ten, to Plaintiff, Ms. Jones. All of the Plaintiffs have seen this email.

12.     In January 2007 Ms. Chord and Ms. Sheryl Witsman, another Caucasian bus driver for Defendant, repeated what Ms. Jones had said on the "cb" radio; Ms. Jones, Ms. Davis, and Mr. Forthenberry, each heard Ms. Chord and Ms. Witsman, and each believed that Ms. Chord and Ms. Witsman were trying to sound like they were black women.

13.     On or about February 26, 2007, six of the Plaintiffs, all except Ms. Brooks and Mr. Hoskins, heard at least one of the following three Caucasian employees of Defendant, Mr. Wayne Cunningham, Ms. Witsman, and Ms. Chord say after Ms. Brooks had been terminated, "One nigger down, more to go."

14.     On or about February 26, 2007, six of the Plaintiffs, all except Ms. Brooks and Mr. Hoskins, saw at least one of the following three Caucasian employees of Defendant, Mr. Cunningham, Ms. Witsman, and Ms. Chord make the following symbolic motions with their

fingers and hand: one finger held up and then a hand stroked across the throat. These Plaintiffs each believe these motions indicated "One nigger down, more to go."

15. On or about February 26, 2007, within minutes of observing the conduct described in paragraphs thirteen and fourteen, Ms. Jones went to Mr. Kegley's office and told him what she had seen and heard Mr. Cunningham, Ms. Witsman, and Ms. Chord doing earlier that day; in addition Mr. Kegley asked Mr. Forthenberry if he had seen and heard this conduct described in paragraphs thirteen and fourteen, and he responded in the affirmative.

16. Later on or about February 26, 2007, Mr. Kegley told Ms. Jones that he had spoken with Mr. Cunningham, Ms. Witsman, and Ms. Chord and that the matter was resolved.

17. Approximately forty minutes after Mr. Kegley had informed Ms. Jones that the matter was resolved, she was in the parking lot and observed Ms. Chord and Ms. Witsman each putting up one finger and then a hand stroked across each of their throats and laughed as Ms. Jones walked by them.

18. On or about February 27 and 28, 2007, Ms. Jones saw Ms. Chord repeat the symbolic sign with one finger held up and then a hand stroked across her throat.

19. On or about February 28, 2007, Ms. Davis and Mr. Forthenberry saw Mr. Cunningham repeat the symbolic sign to Ms. Chord.

20. Defendant is responsible for creating an environment which is racially hostile to African-Americans and it knew or recklessly ignored the fact that its actions were in violation of Plaintiffs' federally protected rights.

21. As a result of Defendant's unlawful discriminatory conduct, Plaintiffs have lost substantial earnings and other job-related benefits. Plaintiff has also suffered severe emotional distress.

WHEREFORE, Plaintiffs request that this Court:

(a) declare that Defendant violated Title VII;

(b) award Plaintiffs pecuniary damages in an amount to compensate him for all damage suffered by virtue of defendant's actions;

(c) award Plaintiffs compensatory and punitive damages in an appropriate amount;

(d) award Plaintiffs prejudgment interest on damages recovered, at the prime rate, compounded annually, or the rate allowed by law; and

(e) award costs, reasonable attorney's fees, and such other relief as it deems just.

**COUNT II -- TITLE VII and §1981--RACE DISCRIMINATION [For Only Plaintiff, Ms. Brooks]**

22. This is an action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§2000e et seq., as amended, and 42 U.S.C. §1981, to redress and enjoin unlawful to redress and enjoin unlawful employment practices by Defendant.

23. Plaintiff, Christina Brooks, repeats and realleges paragraphs 1-21.

24. Plaintiff, Christina Brooks, who is African-American, worked for Defendant as a bus driver from 1998 until 2001; and then again from October 2005 until she was terminated on or about February 26, 2006, by Mr. Kegley for allegedly violating a policy, which stated that a driver is not permitted to leave the bus while a student is on the bus.

25. Ms. Shirley Wells, who is Caucasian, has been a bus driver for Defendant; in around February 2007, Mr. Kegley was aware that Ms. Wells had left the bus she was driving, while a child was on the bus, and Ms. Wells was not disciplined.

26. Mr. David Rice, who is Caucasian, has been a bus driver for Defendant; in around April 2007, Mr. Kegley was aware that Mr. Rice had left the bus he was driving, while a child was sleeping on the bus, and Mr. Rice was not disciplined.

27.     Defendant is responsible for the racially discriminatory conduct of discharging Ms. Brooks while not disciplining two Caucasian drivers for the same alleged policy violation; and it knew or recklessly ignored the fact that its actions were in violation of her federally protected rights.

28.     As a result of Defendant's unlawful discriminatory conduct, Ms. Brooks has lost substantial earnings and other job-related benefits. She has also suffered severe emotional distress.

WHEREFORE, Ms. Brooks requests that this Court:

(a) declare that Defendant violated Title VII;

(b) award Plaintiff pecuniary damages in an amount to compensate him for all damage suffered by virtue of defendant's actions;

(c) award Plaintiff compensatory and punitive damages in an appropriate amount;

(d) award Plaintiff prejudgment interest on damages recovered, at the prime rate, compounded annually, or the rate allowed by law; and

(e) award costs, reasonable attorney's fees, and such other relief as it deems just.

**COUNT III -- TITLE VII and §1981-- RETALIATION  [For Only Plaintiff, Mr. Hoskins]**

29.     This is an action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§2000e et seq., as amended, and 42 U.S.C. §1981, to redress and enjoin unlawful to redress and enjoin unlawful employment practices by Defendant.

30.     Plaintiff, Robert Hoskins, repeats and realleges paragraphs 1-28.

31.     Mr. Hoskins was employed by Defendant as a school bus driver from August 1988  until he was terminated in April 2006.

32.     In around December 2005 Mr. Hoskins spoke with Ms. Bertha Christ,

Defendant's safety coordinator, and complained about the two racially hostile emails, described in paragraph eight and nine of this Complaint, sent by Ms. Chord to more than ten people in November 2005.

33.   On three different occasions between January and March 2006, Mr. Kegley asked Mr. Hoskins whether he had taken the two emails to the assistant superintendent of schools, which was the information Mr. Kegley had received from Ms. Chord; from Mr. Hoskins observations of Mr. Kegley's behavior, he believed that Mr. Kegley thought he did take the emails to the assistant superintendent.

34.   On or about April 14, 2006, Mr. Hoskins was terminated.

35.   The discharge followed Mr. Hoskins engaging in a protected activity within such a period of time as to raise an inference of retaliatory motivation.

36.   Defendant is responsible for the retaliatory conduct of terminating Mr. Hoskins for reporting the racially hostile emails to Ms. Christ; and it knew or recklessly ignored the fact that its actions were in violation of his federally protected rights.

37.   As a result of Defendant's unlawful retaliatory conduct, Mr. Hoskins has lost substantial earnings and other job-related benefits. He has also suffered severe emotional distress.

WHEREFORE, Mr. Hoskins requests that this Court:

(a) declare that Defendant violated Title VII;

(b) award Plaintiff pecuniary damages in an amount to compensate him for all damage suffered by virtue of defendant's actions;

(c) award Plaintiff compensatory and punitive damages in an appropriate amount;

(d) award Plaintiff prejudgment interest on damages recovered, at the prime rate,

compounded annually, or the rate allowed by law; and

 (e) award costs, reasonable attorney's fees, and such other relief as it deems just.

  **COUNT IV -- TITLE VII and §1981--RACE DISCRIMINATION [For Only Plaintiffs, Ms. Jones and Mr. Forthenberry]**

 38. This is an action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§2000e et seq., as amended, and 42 U.S.C. §1981, to redress and enjoin unlawful to redress and enjoin unlawful employment practices by Defendant.

 39. Plaintiffs, Ms. Jones and Mr. Forthenberry [for this Count Plaintiffs will refer only to Ms. Jones and Mr. Forthenberry], repeat and reallege paragraphs 1-37.

 40. On June 4, 2007 Plaintiffs filed charges with the Illinois Department of Human Rights alleging race discrimination.

 41. From July 2007 until January 2008 Plaintiffs were not employed by Defendant to train new bus drivers and a white bus driver, Michael Ross, did the training; Plaintiffs had more seniority than Mr. Ross and Plaintiffs had trained drivers before they had filed charges.

 42. On or about January 8, 2008, Ms. Jones was not selected by Defendant for the position of safety coordinator, for which Ms. Jones had applied; the white woman selected was less qualified than Ms. Jones for several reasons, including the fact the white woman was not licensed to drive a school bus, which was a qualification listed for this position.

 43. On or about April 15, 2008, Ms. Jones received a written reprimand for allegedly violating Defendant's attendance policy; in fact she did not violate the policy.

 44. The conduct of Defendant described in this Count followed Plaintiffs engaging in a protected activity within such a period of time as to raise an inference of retaliatory motivation.

45.     Defendant is responsible for the retaliatory conduct described in paragraphs 41 through; and it knew or recklessly ignored the fact that its actions were in violation of their federally protected rights.

46.     As a result of Defendant's unlawful retaliatory conduct, Plaintiffs have lost substantial earnings and other job-related benefits. They also suffered severe emotional distress.

WHEREFORE, Plaintiffs request that this Court:

(a) declare that Defendant violated Title VII;

(b) award Plaintiffs pecuniary damages in an amount to compensate them for all damage suffered by virtue of defendant's actions;

(c) award Plaintiffs compensatory and punitive damages in an appropriate amount;

(d) award Plaintiffs prejudgment interest on damages recovered, at the prime rate, compounded annually, or the rate allowed by law; and

(e) award costs, reasonable attorney's fees, and such other relief as it deems just.

Respectfully submitted,

Mitchell A. Kline
Law Office of Mitchell A. Kline
203 N. LaSalle Street, Suite 2100
Chicago, Illinois  60601
(312) 558-1454